**JOSEPH M. MCMULLEN**
California State Bar No. 246757
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Email: Joseph_McMullen@fd.org

Attorneys for Mr. Tarabay

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE THOMAS J. WHELAN**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  08CR1280-W |
| Plaintiff, | |
| v. | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| RAUL TARABAY, | |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**[1]

**A.    Inspection**

On March 4, 2008, at approximately 12:15 a.m., Raul Tarabay, a United States citizen, arrived at the San Ysidro Port of Entry driving a Ford F-150 pickup.  At the primary inspection booth, Customs and Border Protection Officer Benson noticed that Mr. Tarabay's hand was trembling and instructed him to open the toolbox located in the bed of the truck.  When Mr. Tarabay was unable to open the toolbox, he was sent to secondary inspection.

A search of the truck at secondary inspection revealed 34 packages containing marijuana

---

[1] The statement of facts is based on information provided by the government.  Mr. Tarabay does not admit its accuracy and reserves the right to challenge it at a later time.

1    concealed in various parts of the vehicle.  Mr. Tarabay was placed under arrest.

2    **B.    First Interrogation**

3        At around 1:40 a.m. on the morning of the arrest, the Case Agent in this case, Immigration

4    and Customs Enforcement (ICE) Special Agent Mario Hernandez advised Mr. Tarabay that

5    marijuana had been found in his vehicle and that he was under arrest.  He then advised Mr. Tarabay

6    of his Miranda rights.  Mr. Tarabay stated that he understood his rights and requested to speak with

7    an attorney.  Agent Hernandez ended the interrogation due to the invocation of the right to counsel,

8    and Mr. Tarabay was transported to the Alvarado Medical Center in San Diego, California, where

9    he remained in the custody of the United States Marshals to await arraignment.

10    **C.    Appointment of Counsel**

11        Later that morning, on March 4, 2008, prosecution of Mr. Tarabay was initiated with the

12    filing of a complaint charging him with violations of 21 U.S.C. §§ 952 and 960 for importation of

13    a controlled substance.  The United States Marshals did not bring Mr. Tarabay to court that day for

14    arraignment, but the Honorable Magistrate Judge Cathy A. Bencivengo provisionally appointed

15    Federal Defenders of San Diego, Inc. to represent Mr. Tarabay in this case on March 4, 2008.

16    **D.    Second Interrogation**

17        One week later, on March 11, 2008, Mr. Tarabay was medically cleared to be transported

18    from Alvarado Medical Center to the Metropolitan Correctional Center (MCC) in the custody of

19    the United States Marshals Service.  However, instead of being transported by the Marshals Service,

20    ICE Case Agent Hernandez was contacted and came to Alvarado Medical Center to personally

21    transport Mr. Tarabay to the MCC.  On the ride over to the MCC, Agent Hernandez interrogated

22    Mr. Tarabay about the case and obtained a confession.

23    **E.    Subsequent Proceedings**

24        On March 12, 2008, Mr. Tarabay was arraigned on the complaint before the Honorable

25    Magistrate Judge Louisa S. Porter and confirmed previously appointed defense counsel.  An

26    indictment was filed in this case on April 23, 2008 charging Mr. Tarabay with importing marijuana

27    in violation of 21 U.S.C. § 952 and 960, and possessing marijuana with intent to distribute in

28    violation of 21 U.S.C. § 841(a)(1).  These motions follow.

1

## II.

2

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

3      Mr. Tarabay was arrested on March 4, 2008.  Defense counsel sent government counsel a

4 letter requesting discovery on March 5, 2008 and followed up with a voice mail message to

5 government counsel on March 14, 2008.  Although Mr. Tarabay has since received some discovery,

6 he hereby moves to compel production of the specific discovery set out below.

7      First, Mr. Tarabay requests copies of the registration documents for the 1997 Ford F-150

8 contained in the truck.

9      Second, because the government produced the investigatory still photographs taken with

10 respect to this case in black-and-white photocopy form, many of those photos are indiscernible.  Mr.

11 Tarabay requests that the Court compel production of color photographs, either in disc or paper

12 form.

13      Third, additional items were collected from the truck driven by Mr. Tarabay.  He requests

14 that the Court order the government to provide an inventory indicating from where items were

15 seized.

16      Finally, defense counsel will want to inspect and photograph the 1997 Ford F-150.  He asks

17 that the Court enter an order for the government to make reasonable accommodations in that regard.

18 **A proposed order has been electronically mailed to the Court to facilitate this request.**

19

## III.

20

## MOTION TO PRESERVE AND RE-WEIGH NARCOTIC EVIDENCE

21      Mr. Tarabay requests an order for the U.S. Government and its agents to preserve the narcotic

22 evidence in this case and permit the defense to re-weigh any narcotic evidence.  For the Court's

23 convenience, a proposed order has been electronically mailed to the Court to facilitate this request.

24

## IV.

25

## MOTION TO DISMISS THE INDICTMENT DUE TO

26

## MISINSTRUCTION OF THE GRAND JURY

27      Mr. Tarabay recognizes that his argument below has been rejected by an en banc court of the

28 Ninth Circuit.  See  United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc), cert.

1    denied, Navarro-Vargas v. United States, 126 S. Ct. 736 (2005).  As the Supreme Court has ordered

2    the government to respond to the same issue in another case litigated by Federal Defenders of San

3    Diego, Mr. Tarabay nonetheless raises it to preserve the issue.

4        Mr. Tarabay moves to dismiss the Indictment due to misinstruction of the Grand Jury.  Mr.

5    Tarabay's arguments are essentially those set out in Judge Hawkins' dissent in United States v.

6    Marcucci, 299 F.3d 1156 (9th Cir. 2002), cert. denied, 1538 U.S. 934 (2003), Judge Kozinski's

7    dissent in United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004), opinion vacated by United

8    States v. Navarro-Vargas, 367 F.3d 920 (9th Cir. 2004), and Judge Hawkins' dissent in United

9    States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc).  Mr. Tarabay incorporates those

10    arguments by reference.  However, if the Court would like further briefing on this issue, Mr.

11    Tarabay is willing to provide it.

12                                              **V.**

13            **MOTION TO SUPPRESS MR. TARABAY'S STATEMENTS**
      **PURSUANT TO THE FIFTH AND SIXTH AMENDMENTS, AND 18 U.S.C. § 3501**
14

15        The government bears the burden of demonstrating that a defendant's statement is voluntary

16    and that any alleged waiver of the defendant's rights under the Fifth and Sixth Amendments is

17    voluntarily, knowingly, and intelligently made.  See United States v. Harrison, 34 F.3d 886, 890

18    (9th Cir. 1994); see also United States v. Dickerson, 530 U.S. 428, 439-41 (2000) (discussing

19    constitutional underpinnings of Miranda v. Arizona, 384 U.S. 436, 444 (1966) and the need to

20    safeguard "precious Fifth Amendment rights"); Michigan v. Harvey, 494 U.S. 344, 350 (1990) ( ;

21    18 U.S.C. § 3501.  Because Mr. Tarabay's rights under the Fifth and Sixth Amendments were

22    violated, his statements must be suppressed.

23    **A.    Violation of Mr. Tarabay's Fifth Amendment Rights Requires Suppression.**

24        "When an accused has invoked his right to have counsel present during custodial

25    interrogation, a valid waiver of that right cannot be established by showing only that he responded

26    to further police-initiated interrogation *even if he has been advised of his rights*."  Edwards v.

27    Arizona, 451 U.S. 477, 484 (1981) (emphasis added).  "Edwards thus established another

28    prophylactic rule designed to prevent police from badgering a defendant into waiving his previously

1  asserted <u>Miranda</u> rights." <u>Harvey</u>, 494 U.S. at 350 (citing <u>Oregon v. Bradshaw</u>, 462 U.S. 1039,

2  1044 (1983)) (emphasis added).  Once a defendant invokes his Fifth Amendment right to counsel,

3  subsequent waiver of that right, even if voluntary, knowing and intelligent under traditional

4  standards is presumed invalid if secured pursuant to police-initiated contact.  <u>Id.</u>

5       At the time of his arrest on March 4, 2008, Mr. Tarabay unequivocally invoked his right to

6  counsel at the outset of Case Agent Hernandez's interrogation.  Mr. Tarabay was then sent to

7  Alvarado Medical Center, where he remained in the custody of the U.S. Marshals Service for a

8  week.  Case Agent Hernandez then re-initiated contact with Mr. Tarabay.  Instead of simply

9  allowing the Marshals Service to transport Mr. Tarabay to the MCC, Case Agent Hernandez

10 personally came to the hospital to transport Mr. Tarabay to the MCC. While Case Agent Hernandez

11 had Mr. Tarabay back in his custody in his vehicle, he was able to obtain Mr. Tarabay's confession.

12 Given such a flagrant violation of <u>Miranda</u>, the Fifth Amendment, and the <u>Edwards</u> prophylactic

13 rule by reinitiating contact despite a prior invocation of the right to counsel, Mr. Tarabay's

14 statements should be suppressed.

15 **B.    <u>Violation of Mr. Tarabay's Sixth Amendment Rights Requires Suppression.</u>**

16      The Supreme Court has held that the Sixth Amendment right to counsel during any

17 interrogation after initiation of adversarial proceedings against the defendant requires at least as

18 must protection as the Fifth Amendment right to counsel at any custodial interrogation.  <u>Harvey</u>,

19 494 U.S. at 350; <u>Brewer v. Williams</u>, 430 U.S. 387, 398 (1977).  "Transposing the reasoning of

20 <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), [the Supreme Court] decided that after a defendant

21 requests assistance of counsel, any waiver of Sixth Amendment rights given in a discussion initiated

22 by police is *presumed invalid*." <u>Harvey</u>, 494 U.S. at 349 (citing <u>Michigan v. Jackson</u>, 475 U.S. 625,

23 636 (1986)) (emphasis added).

24      Mr. Tarabay invoked his right to assistance of counsel to Case Agent Hernandez on March

25 4, 2008.  That same morning, Mr. Tarabay was appointed defense counsel by the Honorable

26 Magistrate Judge Cathy A. Bencivengo.  One week later, Case Agent Hernandez drove to Alvarado

27 Medical Center and reinitiated contact with Mr. Tarabay outside of the presence of counsel and

28 obtained incriminating statements.  Any purported waiver of Mr. Tarabay's right to counsel is

presumptively invalid and his statements should be suppressed as they were obtained in violation of Mr. Tarabay's Sixth Amendment right to counsel.

### C.    The Government Bears the Burden of Proving Mr. Tarabay's Statements Were Made Voluntarily.

A defendant in a criminal case is deprived of due process of law if the conviction is founded upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). This is so even when the procedural safeguards of Miranda have been satisfied. Id. The government bears the burden of proving by a preponderance of the evidence that a confession is voluntary. Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Some factors taken into account have included the age of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. Id.

A confession is deemed involuntary whether coerced by physical intimidation or psychological pressure. Townsend v. Sain, 372 U.S. 293, 307 (1962). "The test is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). See also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

Until the government meets its burden of showing all statements of Mr. Tarabay that it intends to use at trial were voluntary, his statements must be suppressed as involuntary. 18 U.S.C. § 3501(a).

//

//

//

1

2

**D.    Mr. Tarabay's Statements Should be Suppressed Because the Interrogation Occurred Well Beyond the Six Hour Safe Harbor of 18 U.S.C. § 3501(a).**

3        Title 18 U.S.C. § 3501(c) provides a six-hour "safe-harbor" period after an arrest and before

4    the arraignment during which a confession will not be excluded solely because of delay. "The safe

5    harbor may be extended beyond six hours if the delay is reasonable and is due to the means of

6    transportation and the distance to the nearest magistrate." United States v. Padilla-Mendoza, 157

7    F.3d 730, 731 (9th Cir. 1998) (citing United States v. Wilson, 838 F.2d 1081, 1084 (9th Cir. 1988)

8    (emphasis added). Although confessions obtained beyond this period are not inadmissible *per se*,

9    "[s]tatements made outside the six-hour 'safe harbor' may be excluded solely for delay." United

10    States v. Van Poyck, 77 F.3d 285, 288 (9th Cir. 1996); see also Wilson, 838 F.2d at 1084 (9th Cir.

11    1988) ("Discretion remains in the trial judge, under subsection 3501(b), to exclude confessions as

12    involuntary solely because of delay in arraignment during which a confession is given, that exceeds

13    six hours.").

14        The Ninth Circuit has determined that notwithstanding delay in contravention of the safe

15    harbor, a statement may be admitted if:(1) if the delay was reasonable, or (2) if public policy

16    concerns weigh in favor of admission. Padilla-Mendoza, 157 F.3d at 731. "The public policy

17    concerns include discouraging officers from unnecessarily delaying arraignments, preventing the

18    admission of involuntary confessions, and encouraging early processing of defendants." Id.

19        In United States v. Gamez, 301 F.3d 1138 (9th Cir. 2002), the court upheld the district court's

20    finding that the defendant's statement given after an overnight detention was admissible under both

21    the reasonableness and public policy standards. Id. at 1143. The defendant, a Spanish-speaking

22    Mexican national, was arrested along with several other suspects found near the Arizona-Mexico

23    border shortly after the fatal shooting of a Border Patrol agent. Id. at 1141. Although it would have

24    been standard procedure for the FBI to take the defendant to the federal prison in Tuscon the night

25    he was arrested, the FBI could not do so because all agents in the area were involved in the murder

26    investigation. Id. at 1142. The next morning, the defendant was interrogated when the first

27    available Spanish-speaking FBI agent arrived at the Border Patrol station. Id. at 1143. Given the

28    circumstances of the shooting which involved multiple suspects, "[i]t was impossible to determine

1   with what kind of offense [the defendant] would be charged prior to interrogating him." Id.

2   Accordingly, the post-safe-harbor interrogation was both reasonable and did not contravene public

3   policy, and the court upheld the admissibility of the defendant's statements. Id.

4          In contrast, the Ninth Circuit reversed the district court's finding that defendant's statements

5   during an FBI interrogation conducted more than six hours after his arrest were admissible in

6   Wilson.  838 F.2d at 1084, 1087.  The defendant, who was the sole suspect in the FBI's

7   investigation of the aggravated battery of the child of his common law wife, was arrested at night

8   and detained overnight at the tribal jail. Id. at 1083.  The next morning, FBI agents came to the jail

9   and conducted an interrogation of the defendant for two hours in the afternoon. Id.  Because he was

10  being questioned, the defendant missed the regularly scheduled arraignment calendar on that day

11  and had to be specially arraigned in the judge's chambers. Id.  The Ninth Circuit rejected as clearly

12  erroneous the district court's finding that the delay was reasonable:

> Even assuming that the delay overnight was reasonable, there is no reasonable excuse
> why [the defendant] was not promptly arraigned at the beginning of the arraignment
> calendar the next day.  The desire of the officers to complete the interrogation is,
> perhaps, the most unreasonable excuse possible under § 3501(c).

16  Id. at 1085 (emphasis added).

17         The court went on to find that the defendant's statements were made involuntarily based on

18  the five factors to be considered in determining voluntariness under § 3501(b), giving considerable

19  weight to the fact that the interrogation was conducted beyond the six-hour safe harbor period:

> The fact that unreasonable delay, alone, beyond six hours may support a finding of
> involuntariness suggests that unreasonable delay is the most important factor of all.

22  Id. at 1086.

23         Finally, the court emphasized the importance of preventing law enforcement officers from

24  violating the six-hour safe harbor provision:

> The purposes embedded in § 3501 – to prevent confessions extracted due to prolonged
> pre-arraignment detention and interrogation, and to supervise the processing of
> defendants from as early a point in the criminal process as is practicable – are
> frustrated when the arraignment of a defendant who has been in custody for more than
> six hours is further delayed for no purpose other than to allow further interrogation of
> the defendant. If we countenance the police procedure followed here, we give officers
> a free hand to postpone any arraignment until a confession is obtained.  That was not
> the legislative intent behind § 3501.  It was error to deny the suppression motion.

8                                                    08CR1280-W

1    Id. at 1087.

2    Thus, except in cases in which it is impossible to properly arraign a defendant until after he

3    has been interrogated, such as in complex cases involving multiple suspects, statements obtained

4    from interrogations conducted after the six-hour safe harbor period has expired should not be

5    admitted under § 3501(c).  As the interrogation of Mr. Tarabay did not occur until a full week after

6    his arrest, his statements should be suppressed.

7    **E.    This Court Must Conduct An Evidentiary Hearing to Determine the Voluntariness of Mr. Tarabay's Statements.**

8

9    This Court must make a factual determination as to whether a confession was voluntarily

10    given prior to its admission into evidence.  18 U.S.C. § 3501(a).  Where a factual determination is

11    required, courts are obligated by Federal Rule of Criminal Procedure 12 to make factual findings.

12    See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression

13    hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467

14    U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated

15    recitation of purported evidence in a prosecutor's responsive pleading.  Under section 3501(b), this

16    Court must consider "all the circumstances surrounding the giving of the confession," including:

17    (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such
18    defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such
19    defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such
20    defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of
21    counsel when questioned and when giving such confession.

22    18 U.S.C. § 3501(b).

23    Without the presentation of evidence, this Court cannot adequately consider these statutorily

24    mandated factors.  Accordingly, Mr. Tarabay requests that this Court conduct an evidentiary hearing

25    pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any

26    statements made by Mr. Tarabay were voluntary.

27    //

28    //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.

## <u>LEAVE TO FILE FURTHER MOTIONS</u>

At this time Mr. Tarabay has received only limited discovery.  As new information surfaces – via discovery provided by government, defense investigation, or an order of this court – the defense may need to file further motions, or to supplement existing motions.  For this reason, defense counsel requests leave to file further motions.

## VII.

## <u>CONCLUSION</u>

For the reasons stated, Mr. Tarabay requests that this Court grant his motions.

Respectfully Submitted,

_____/s/ Joseph M. McMullen_____

Dated: May 19, 2008                     **JOSEPH M. MCMULLEN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Tarabay

1

## CERTIFICATE OF SERVICE

2

 Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best

3

of his information and belief, and that a copy of the foregoing document has been served this day

4

upon:

5

**Luella Mendoza Caldito**

6

Luella.Caldito@usdoj.gov, Diana.Ortiz@usdoj.gov, efile.dkt.gc1@usdoj.gov

7

8

9

Dated: May 19, 2008                    _/s/  Joseph McMullen_____

10

JOSEPH McMULLEN
Federal Defenders of San Diego, Inc.

11

225 Broadway, Suite 900
San Diego, CA 92101-5030

12

(619) 234-8467  (tel)
(619) 687-2666  (fax)

13

e-mail: Joseph_McMullen@fd.org

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28